UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Association for Government Accountability, Senator Mark Koran, Senator Calvin Bahr, James Roschen, Debra Roschen, Megan Nelson, Andrew Nelson, Dawn Appel, Daniel Appel, Cindy Kohn, David Kohn, Tammi Johnson, Larry Johnson, Meghan Hewitt, A.H. by her next friend and parent Meghan Hewitt, Sarah Johnson, A.J. by his next friend and parent Sarah Johnson,<br><br>                 Plaintiffs,<br><br>v.<br><br>Steve Simon, individually and in his official capacity as Minnesota Secretary of State, or his successor, and David Maeda, individually and in his official capacity as Director of Elections for State of Minnesota, or his successor,<br><br>                 Defendants. | Civ. No. 23-3159 (PAM/DTS)<br><br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Defendants' Motion to Dismiss and Plaintiffs' Motion for a Preliminary Injunction. For the following reasons, the Motion to Dismiss is granted, the Motion for Preliminary Injunction is denied, and Plaintiff's claims are dismissed.

## BACKGROUND

The Association for Government Accountability is a group of Minnesota residents "who by community organization seek to improve the government." (Am. Compl. (Docket No. 7) ¶ 6.) Plaintiffs—the Association, 14 members of the Association, and two of their

children—assert that Minnesota law requires Defendants Secretary of State Steve Simon and Director of Elections David Maeda to violate the federal Drivers Protection and Privacy Act ("DPPA"), 18 U.S.C. §§ 2721 et seq., by using the data from state drivers'-license databases to conduct state-sponsored voter-registration drives. (Am. Compl. ¶ 1.) Plaintiffs' Amended Complaint raises one claim under the DPPA, seeking actual or liquidated damages, declaratory and injunctive relief, and costs and attorney's fees against Defendants in their official and individual capacities. After Defendants brought a motion to dismiss, Plaintiffs moved for an injunction prohibiting Defendants from disclosing private driver data.

**DISCUSSION**

**A.    Motion to Dismiss**

In reviewing whether a complaint states a claim on which relief may be granted, this Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in Plaintiffs' favor. Aten v. Scottsdale Ins. Co., 511 F.3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." Id. at 570. In assessing the sufficiency of the complaint, the Court may disregard legal conclusions that are couched as factual allegations. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

1.     **Statutory Background**

Twenty-four states, including Minnesota, participate in a consortium called the Electronic Registration Information Center ("ERIC"). This consortium receives information from each state's drivers-license and voter registration systems and conducts audits to determine whether individuals have moved to a different state or within the state, whether any of the registrants have died, and whether any drivers are eligible to vote but remain unregistered. ERIC provides reports to participating states, including a report indicating which drivers are eligible but unregistered to vote, what the parties call "EBUs."

The Minnesota Legislature authorized the State's participation in ERIC in 2014. 2014 Minn. Laws ch. 238, § 2, at 765-66; see also inter alia, Minn. Stat. § 201.13. Thus, the State has participated in ERIC for nearly 10 years, sending drivers'-license and voter-registration data to ERIC, and receiving reports from ERIC. Minnesota uses the eligible-but-unregistered report to contact those individuals and encourage them to register to vote. Plaintiffs contend that this use violates the DPPA.

In 2002, Congress enacted the Help America Vote Act ("HAVA"), with the express purpose to standardize the collection of voter data in each State. 52 U.S.C. § 21083(a)(1)(A) (providing that "each State, acting through the chief State election official, shall implement . . . a single, uniform, official, centralized, interactive computerized statewide voter registration list . . . at the State level that contains the name and registration information of every legally registered voter in the State"). HAVA requires State elections officials to "enter into an agreement to match information in the database of the statewide voter registration system with information in the database of the

3

motor vehicle authority . . . to enable each such official to verify the accuracy of the information provided on applications for voter registration." Id. § 21083(a)(5)(B).[1] Minnesota law therefore requires the Department of Public Safety (through the Driver and Vehicle Services Division) to provide drivers'-license data to the Secretary of State. Minn. Stat. § 171.12, subd. 7a(b). The purpose of this requirement is to "increase[e] voter registration and improv[e] the accuracy of voter registration records in the statewide voter registration system." Id. As part of ensuring the accuracy of voter records, the Secretary of State is authorized to share the information received from the DVS database "with an organization governed exclusively by a group of states"—in other words, with ERIC. Id. § 201.13, subd. 3(d).

2. **DPPA**

DPPA prohibits the disclosure of "personal information[] from a motor vehicle record[] for any use not permitted" by the DPPA. 18 U.S.C. § 2722(a). There are multiple "permissible uses" of drivers'-license data under the statute, including for law enforcement functions, motor vehicle safety, including product recalls, and, as relevant here, "use by any government agency . . . in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions," and "use in research activities, and for use in producing statistical reports, so long as the personal

---

[1] At the hearing, Plaintiffs argued that this subsection of HAVA means that State officials may use a database such as ERIC only for the purpose of verifying voter-registration information and for no other purpose. If Congress had intended that HAVA restrict the use of voter data in the way Plaintiffs argue, it could easily have so provided in the statute. Plaintiffs' narrow reading of HAVA is not warranted.

4

information is not published, redisclosed, or used to contact individuals." Id. § 2721(b)(1), (5). Plaintiffs claim that the DPPA does not permit the use of drivers'-license information to encourage people to register to vote. Therefore, Minnesota state statutes allowing this use violate the DPPA. They bring their claim under the DPPA's civil-enforcement provision, which allows an individual whose information is unlawfully disclosed to bring a civil action against any "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under" the statute. Id. § 2724(a).

The DPPA defines "person" under § 2724(a) narrowly, however: "'person' means an individual, organization or entity, but does not include a State or agency thereof." Id. § 2725(2). The DPPA's only express mention of State liability is in the form of a civil penalty "imposed by the Attorney General" for "[a]ny State department of motor vehicles that has a policy or practice of substantial noncompliance" with the statute. Id. § 2723.

### 3. Official Capacity Claim

Plaintiffs argue that Ex parte Young allows them to bring a claim for prospective injunctive relief against Defendants in their official capacities.[2] But "[b]ecause the DPPA specifically provides for a separate civil-penalty provision against state motor-vehicle departments, . . . the DPPA . . . preclude[s] even suits for prospective relief against state officials acting in their official capacities." Potocnik v. Carlson, 9 F. Supp. 3d 981, 991

---

[2] Plaintiffs do not dispute that the Eleventh Amendment bars any action for damages against state officials acting in their official capacities. Louisiana v. Jumel, 107 U.S. 711, 719-23 (1883).

5

n.5 (D. Minn. 2014) (Schiltz, J.) (citing Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 74 (1996)).

Plaintiffs contend that the holding in Potocnik is erroneous, because the Supreme Court in Seminole Tribe counseled that "a court should hesitate before casting aside [statutory] limitations and permitting an action against a state officer based upon Ex parte Young" only when "Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right." Seminole Tribe, 517 U.S. at 74. Plaintiffs assert that the DPPA does not have a "detailed" remedial scheme, and therefore the caution Seminole Tribe expressed regarding injunctive relief does not apply to the DPPA. But Plaintiffs cite no cases so holding and the Court has not located any such authority. Because the DPPA expressly precludes lawsuits against states and their agencies, "no matter what relief is sought by the plaintiff," Potocnik, 9 F. Supp. 3d at 997, Plaintiffs' claim for injunctive relief against Defendants in their official capacities fails.

### 4. Individual-Capacity Claim

Plaintiffs next argue that they can bring a claim for injunctive relief against Defendants in their individual capacities for the alleged violations of DPPA "because they have acted ultra vires in approving or implementing contracts" that violate the DPPA. (Am. Compl. ¶ 220.) Defendants contend that this statement is insufficient to plead individual liability because it does not describe any particular action either Defendant took that was ultra vires and that allegedly violated the DPPA.

An official acting "within the sphere of their official responsibilities" is generally immune from damages. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 107

6

(1984) (emphasis omitted). And, as discussed previously, such officials are also generally immune from suits for injunctive relief under Ex parte Young. Plaintiffs rely on an exception to this immunity when where "the acts of state officials . . . are plainly ultra vires under state law itself." Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 270 (1997). Officials alleged to be acting ultra vires, however, may be liable only "for [their] own misconduct" and not for the actions of others. Stewart v. Precythe, 91 F.4th 944, 949 (8th Cir. 2024) (quotation omitted). It is therefore imperative for a plaintiff claiming the ultra vires exception to official immunity to plead and ultimately establish that the officials themselves committed misconduct under state law.

Here, Plaintiffs do not dispute that Defendants were acting according to state law. Indeed, at bottom, Plaintiffs' claim is that the state law allowing Defendants to share data with and receive reports from ERIC violates the DPPA. Such conduct is not "[u]nauthorized . . . [or] beyond the scope of power allowed or granted . . . by law." Ultra vires, Black's Law Dictionary (11th ed. 2019).

"[I]f the actions of an officer do not conflict with the terms of his valid statutory authority, then they are the actions of the sovereign" and Eleventh Amendment sovereign immunity bars enjoining that action. Larson v. Domestic & Foreign Com. Corp., 337 U.S. 682, 695 (1949). Because Plaintiffs do not argue that Defendants acted beyond their statutory authority, but rather that the statutory authority itself was invalid and thus that an injunction against Defendants' actions is warranted, their claim is barred by sovereign immunity.

Even if sovereign immunity did not apply, there is no specific allegation in the Amended Complaint that supports Plaintiffs' argument that Defendants bear anything other than official responsibility for enforcing a legitimately enacted state policy. The Amended Complaint describes how ERIC functions and the state laws that allow the sharing of data with ERIC, but does not describe any specific action either Defendant took or failed to take that was allegedly ultra vires. Plaintiffs only allege broadly that Defendants "acted ultra vires in approving or implementing contracts which authorize the disclosures of plaintiffs' DPPA-protected information to ERIC and others in violation of the DPPA and in approving or authorizing the disclosures of plaintiff's' [sic] DPPA-protected information to ERIC and others in violation of the DPPA." (Am. Compl. ¶ 220.) Other than the Amended Complaint's description of each Defendant's position (id. ¶¶ 24-27), paragraph 220 is the only allegation addressing what either Defendant individually did or failed to do. Plaintiffs have not sufficiently pleaded any individual actions on the part of these Defendants that could plausibly subject either Defendant to liability.

Assuming that Plaintiffs sufficiently alleged individual actions that could plausibly establish individual-capacity liability, however, those claims would still run afoul of Minnesota's sovereign immunity. See Coeur d'Alene Tribe, 521 U.S. at 270 ("To interpret [Ex parte] Young to permit a federal-court action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer, named in his individual capacity, would be to adhere to an empty formalism and . . . undermine [Eleventh Amendment] principle[s]."). "The Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'" Pennhurst State Sch.,

8

465 U.S. 101 (quoting Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459, 464 (1945)). The State is the real party in interest here, because "[i]t is the state's policies, and not defendants' implementation of them, that are at the heart of plaintiffs' complaint. Thus, plaintiffs' claims under the [DPPA] are substantially against the State . . . and [are] barred by the doctrine of sovereign immunity." Kraege v. Busalacchi, 687 F. Supp. 2d 834, 836 (W.D. Wis. 2009). Put differently, Plaintiffs do not challenge the way Defendants are implementing Minnesota's statutory scheme and policies. See id. at 837 (Plaintiffs do not allege "that defendants engaged in any conduct that is both independent of what the [state's] policies require and a violation of the Act."). Instead, Plaintiffs allege that the statutes and policies themselves violate federal law. This is substantially a suit against the state itself and is barred by the Eleventh Amendment. Plaintiffs' claims therefore fail as a matter of law.

**B.      Motion for Preliminary Injunction**

A party seeking a preliminary injunction must show, among other things, a probability of success on the merits of its claims. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc). And "where a preliminary injunction is sought to enjoin the implementation of a duly enacted state statute," the Court must make a "threshold finding" that the movant has "a substantial likelihood of success on the merits" of its claims, not merely a "fair chance of prevailing." Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds, 530 F.3d 724, 731-33 (8th Cir. 2008) (quotations omitted). Plaintiffs do not dispute Defendants' contention that the injunction Plaintiffs seek would

enjoin Defendants' implementation of Minnesota law, and Plaintiffs must therefore demonstrate "a substantial likelihood of success on the merits" to secure an injunction.

As discussed in the previous section, however, Plaintiffs' claims are barred by sovereign immunity and thus fail on the merits. Plaintiffs cannot establish that their claims are substantially likely to succeed, or even that they have a fair chance of prevailing, and their request for injunctive relief is therefore denied.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendants' Motion to Dismiss (Docket No. 9) is **GRANTED**;

2. Plaintiffs' Motion for Preliminary Injunction (Docket No. 11) is **DENIED**; and

3. This matter is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   February 20, 2024                                  *s/Paul A. Magnuson*
                                                                            Paul A. Magnuson
                                                                            United States District Court Judge